***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee/employer relationship existed at the time of the alleged accident.
2. CNA was the carrier on the risk at the time of the injury.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the injury, the Employer employing the requisite number of employees to be bound under the provisions of said Act.
4. Plaintiff's average weekly wage was $455.00.
5. The parties stipulated into evidence as Stipulated Exhibit # 1, notebook containing I.C. Forms, and Plaintiff's medical records.
6. The parties stipulated into evidence as Stipulated Exhibit # 2, Pre-Trial Agreement, as modified and initialed by the parties.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury to his back on April 26, 1999, while performing his work duties for Defendant-Employer.
2. Defendants filed an I.C. From 60 admitting Plaintiff's right to compensation on July 22, 1999, and has paid temporary total disability benefits to Plaintiff since that time. The issue to be determined herein is whether Plaintiff's benefits should be suspended or terminated for his alleged refusal to participate in a Functional Capacity Evaluation (FCE).
3. Plaintiff treated with Dr. Leonard Nelson for his compensable back injury until September 4, 2002, when he was released to the care of his primary care physician, Dr. Richard Noble, an Internist, for pain management.
4. Dr. Nelson had previously assigned a 30% permanent partial impairment rating to Plaintiff's back on July 9, 2001, as a result of his compensable injury.
5. On March 26, 2002, Plaintiff participated in an FCE at Raleigh Orthopedic Clinic that had been requested by Dr. Nelson. Plaintiff was unable to complete this scheduled FCE due to his increased resting heart rate and elevated blood pressure readings.
6. On July 24, 2002, Dr. William Newman, a cardiologist, examined Plaintiff. He performed an echocardiogram at this visit, which was within normal limits.
7. On May 14, 2003, Dr. Newman examined Plaintiff again and noted that from a cardiovascular standpoint, he saw no reason Plaintiff could not participate in an FCE. Dr. Newman did not think that Plaintiff's participation in the FCE would require him to exercise for very long. During Dr. Newman's deposition testimony, however, he testified that he did not know what an FCE was. The evidence presented does not establish how long it takes to complete a standard FCE, or how much exercise would be required in an FCE to measure the physical level of exertion needed in order for a person to perform certain job duties.
8. On June 6, 2003, Dr. Richard Noble wrote a note stating that Plaintiff was still unable to perform the recommended FCE due to his severe back pain, which was aggravated by any level of exertion. Dr. Noble further stated that Plaintiff's tachycardia and hypertension were also worsened by exertion.
9. Despite of Dr. Noble's June 6, 2003 opinion that Plaintiff was unable to perform an FCE, Plaintiff still opted to travel to Raleigh Orthopedic Clinic on June 17, 2003, to try to participate in the FCE scheduled by Defendants. At 8:20 a.m. that morning, Plaintiff's blood pressure was taken and found to be 150/96 with a heart rate of 112. At 8:30 a.m., his blood pressure was 152/98 with a heart rate of 112. At 9:05 a.m., Plaintiff's blood pressure was 150/98 with a heart rate of 110. These readings were "borderline" in the opinion of Patricia Holdaway, Occupational Therapist.
10. Due to Plaintiff's high blood pressure readings, his elevated resting heart rates, as well as the medical opinion of his primary treating physician, Plaintiff expressed concerns regarding his ability to perform this FCE. Ultimately Plaintiff decided, given these circumstances presented to him on June 17, 2003, that he should not continue this FCE. Ms. Holdaway characterized Plaintiff's behavior as noncompliant and uncooperative because he did not want to proceed with the testing.
11. Based on the greater weight of the evidence, Plaintiff's decision not to participate in the June 17, 2003 FCE was justified under the circumstances.
12. Due to Plaintiff's failure to complete his June 17, 2003 FCE, Defendants filed an Industrial Commission Form 24, contending that Plaintiff's compensation should be suspended on the ground that his refusal to complete the FCE constituted a refusal to cooperate with medical treatment.
13. After Plaintiff's June 17, 2003 failure to complete his FCE, Defendants did not file a motion with the Industrial Commission requesting an order directing Plaintiff to cooperate with the FCE. On or before June 17, 2003, the Industrial Commission had not ordered Plaintiff to cooperate with medical treatment or that he complete an FCE.
14. On August 8, 2003, a Special Deputy Commissioner from the Executive Secretary's Office determined that the Industrial Commission was unable to reach a decision on Defendants' Form 24 Application in the informal hearing process. Defendants appealed from this ruling and the matter was heard de novo by Deputy Commissioner Rowell.
15. The claim asserted by Defendants in this matter, that Plaintiff has refused to cooperate with his recommended medical treatment, is covered under N.C. Gen. Stat. § 97-25, and not under N.C. Gen. Stat. § 97-27.
16. Pursuant to N.C. Gen. Stat. § 97-25, a prior order by the Industrial Commission is required before Plaintiff's compensation is suspended for his failure to cooperate with or comply with his recommended medical treatment. There is no such order in this matter. Also, under the circumstances, Plaintiff had a reasonable belief that he was not medically able to participate in the FCE on June 17, 2003.
17. Plaintiff's treating physician, Dr. Nelson, who treated Plaintiff for his orthopedic condition, released him to the care of Dr. Noble, an Internal Medicine physician, for continuing treatment and management of his pain. Plaintiff's current primary treating physician is Dr. Noble and his opinion is given more weight than the contrary opinions of other doctors on whether Plaintiff could perform the FCE.
18. The treatment provided to Plaintiff by Dr. Noble was reasonably required to effect a cure, provide relief or lessen his disability.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the greater weight of the evidence that his failure to complete his June 17, 2003 FCE was justified. N.C. Gen. Stat. § 97-25.
2. Dr. Noble should be designated as an authorized treating physician for Plaintiff, to manage his care and treatment related to his April 26, 1999 compensable back injury. The treatment provided to Plaintiff by Dr. Noble was reasonably required to effect a cure, provide relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants' request to suspend Plaintiff's compensation benefits is DENIED.
2. Dr. Noble is authorized as a treating physician for Plaintiff.
3. Defendants shall pay the costs.
This the ___ day of September 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER